IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MELANIE SMITH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:22-cv-00544 |
| VERGE MOBILE, INC., | ) ) | JUDGE CAMPBELL MAGISTRATE JUDGE NEWBERN |
| Defendant. | ) | |

## **MEMORANDUM**

Pending before the Court is a motion for summary judgment (Doc. No. 21) filed by Defendant Verge Mobile, Inc. ("Verge"), which is fully briefed. (*See* Doc. Nos. 27, 30). For the reasons discussed below, Verge's motion will be **DENIED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Verge is an authorized seller for T-Mobile cell phones. (Doc. No. 28 ¶ 1). Plaintiff Melanie Smith ("Smith") worked for Verge as a district manager from January 2021 through the end of May 2021. (*Id*. ¶¶ 2-3, 44-47). As a district manager, Smith was responsible for overseeing six stores, and the store manager at each store reported directly to Smith. (*Id*. ¶ 5; Doc. No. 27-4 ). Smith's job responsibilities included hiring, coaching, working the floor, selling, and inventory. (Doc. No. 28 ¶ 6).

In or about February 2021, Justin Wall became Smith's direct supervisor. (*Id*. ¶ 10). Wall had issues with multiple female store managers and talked about wanting to "get rid of" them on a daily basis. (*Id*. ¶¶ 21, 27). On one occasion, Wall told Smith he was going to make a female store manager cry so that she would quit. (*Id*. ¶ 21). On another occasion, Wall told Smith: "this is why women should not be in your position." (*Id*. ¶ 35). At other times, Wall berated Smith or

would outright not allow her to take time off. (*Id*. ¶ 37; Doc. No. 31 ¶ 1). Wall regularly screamed at Smith and female store managers for tardiness, but refused to discipline male store managers when they were late or did not show up for work. (Doc. No. 28 ¶ 56; Doc. No. 31 ¶¶ 2, 4; Doc. No. 27-8 at PageID # 301-304).

During her employment, Smith reported Wall's discriminatory treatment to managers and senior employees. (Doc. No. 31 ¶ 5; Doc. No. 27-8 at PageID # 298-299). After she complained to human resources, Wall's harassment of Smith increased. (Doc. No. 27-1 ¶ 3). On or about April 26, 2021, after Smith informed Wall that she had reported his behavior to human resources, Smith became aware of her job being posted to Indeed. (*Id*. ¶¶ 4-5). Thereafter, Wall asked Smith how old she was and then told her: "you're too old for this position." (Doc. No. 28 ¶ 42). On or about May 27, 2021, at the Gallatin Pike location, Wall told Smith to stop acting like a "battered woman," before he cornered her in a back room and yelled at her for 45 minutes to an hour while she was crying and he was flailing his hands in her face. (Doc. No. 27-8 at PageID # 290-291).[1] As of result of Wall's treatment of her, Smith felt she had no other choice but to quit. (Doc. No. 31 ¶ 9). Smith was 43 years old when her employment with Verge terminated. (*See* Smith Deposition at 44:18-21). Verge hired a younger man to replace Smith. (Doc. No. 27-2 at PageID # 253).

Smith filed this action against Verge on July 20, 2022, alleging claims of hostile work environment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"). (Doc. No. 1). On July 6, 2023, Verge moved for summary judgment on each of Smith's claims.

---

[1] Wall was aware that Smith is a survivor of domestic violence. (Doc. No. 27-8 at PageID # 295).

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A. Sex and Age Discrimination**

To establish a *prima facie* case of discrimination under Title VII and the ADEA, a plaintiff must show that: (1) she is part of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019).[2] Verge challenges Smith's ability to establish the third and fourth elements of these claims.

   1. <u>Adverse Employment Action</u>

Verge contends that Smith cannot establish this element because she quit her job. In response, Smith contends that she was constructively discharged. It is well-established that constructive discharge is an adverse employment action. *See e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 728 (6th Cir. 2014). A constructive discharge occurs when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation. *See id*. at 727. Here, Smith points to her deposition testimony that she felt she had no other choice but to quit. (Doc. No. 31 ¶ 9). There is also evidence that Wall intended to make other female employees' working conditions intolerable so that they would quit. (*See* Doc. No. 28 ¶¶ 21, 27). Viewing the evidence and drawing all reasonable inferences in the light most favorable to Smith, the Court finds that there are material questions of fact in dispute as to whether Smith was constructively discharged.

---

[2] "Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework." *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

## 2. Replaced by Someone Outside of the Protected Class

Verge argues Smith cannot establish this element because she cannot show that she was treated less favorably than similarly situated male employees or that she was replaced by a substantially younger employee. A plaintiff can satisfy this element of their *prima facie* discrimination claim by demonstrating that they were replaced by someone outside of their protected class or that they were treated differently than similarly situated non-protected employees. *See Redlin*, 921 F.3d at 606. Here, Verge replaced Smith with a male employee who was "probably [in his] mid 30s" as of May 4, 2023. (*See* Doc. No. 27-2 at PageID # 253; Doc. No. 28 ¶ 55). Accordingly, Smith has satisfied this element for her sex discrimination claim. As for her age discrimination claim, age differences of seven or more years have generally been sufficient to meet the fourth element of an age discrimination case. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 336, 340 (6th Cir. 2003). Viewing the evidence in the light most favorable to Smith, the Court finds that there is a genuine dispute of fact as to the age of the employee who replaced her.

## B. Hostile Work Environment

In general, to prevail on a hostile work environment claim, a plaintiff must show that (1) they belonged to a protected group, (2) they were subject to unwelcome harassment, (3) the harassment was based on their membership in the protected group, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) there is a basis for liability on the part of the employer.[3] *See Johnson v. Ford Motor Co.*, 13 F.4th 493, 503 (6th Cir. 2021); *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). It is undisputed that Smith belonged to a protected group

---

[3] "In the case of a harassing supervisor, the employer is vicariously liable for the hostile work environment." *Doe v. City of Detroit, Michigan*, 3 F.4th 294, 301 (6th Cir. 2021). "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 412 (6th Cir. 2021) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)).

and was subjected to unwelcome harassment. Verge argues Smith cannot prove the harassment was based on sex or that it was sufficiently severe or persuasive enough to create a hostile work environment. (Doc. No. 22 at 9-12).

1. <u>Harassment Based on Sex</u>

Verge submits that the following excerpts from Smith's deposition testimony show the absence of evidence that Wall's harassment was based on Smith's sex, (*see* Doc. No. 22 at 10 (citing Doc. No. 24-1 at 56:13-14; 80:23-81:6; 81:14-17)):

> Q: Did he ever berate Jonathan for being late?
>
> A: Yes. Yes. Jonathan was late one day. He had –
>
> ***
>
> Q: So in her second paragraph here, she says, "During his first store visit, he not only made me uncomfortable about sales but made multiple customers uncomfortable by the way he was speaking to them." Do you know which reps he's talking about here?
>
> A. John.
>
> Q. John?
>
> A. John. I can't remember his last name. John is the rep.
>
> ***
>
> A. …like, the second he met him, he was very rude. And when John would talk to customers that day, that's the day I had referenced earlier when Justin got involved in Kaitlin's sale, and he made John feel very uncomfortable. …

Smith's foregoing testimony about Wall's interactions with two male employees does not demonstrate an absence of evidence that Wall's harassment of Smith was based on her sex. Furthermore, there is ample evidence in the record from which a reasonable jury could conclude Wall's harassment was based on Smith's sex. Indeed, it is undisputed that Wall told Smith during her employment: "this is why women should not be in your position" and "quit acting like a

6

battered woman." (Doc. No. 28 ¶¶ 35, 44). Viewing the evidence in the light most favorable to Smith, Verge has failed to show an absence of evidence in support of this element.

2. Whether the Harassment Created a Hostile Work Environment

For her hostile work environment claim, Smith must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ...." *Strickland v. City of Detroit*, 995 F.3d 495, 505 (6th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Hostile work environment claims "are based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see id.* ("Their very nature involves repeated conduct."). Thus, courts "must consider the totality of the circumstances in determining whether the harassment was sufficiently severe and pervasive." *Strickland*, 995 F.3d at 506;[4] *id.* ("The harassing conduct cannot be viewed in isolation."); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562-63 (6th Cir. 1999) ("the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case.") (emphasis in original). Factors relevant to this analysis include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Court may also consider conduct and/or comments which disparage or single out members of a protected class of which the plaintiff is a member,

---

[4] "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris*, 510 U.S. at 21-22). Here, Verge does not challenge Smith's subjective view of the work environment as abusive.

even if the conduct and/or comments were directed at someone other than the plaintiff, because such evidence is relevant to whether a work environment was objectively hostile. *See Strickland*, 995 F.3d at 506; *Jackson v. Quanex Corp.*, 191 F.3d 647, 660-61 (6th Cir. 1999). Facially neutral incidents may be considered in the hostile work environment analysis when there is some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013). Whether conduct is severe or pervasive is "quintessentially a question of fact." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333-34 (6th Cir. 2008) ("Summary judgment is appropriate only if the evidence is so one-sided that there is not genuine issue of material fact as to whether there was a hostile work environment.")

Here, there is evidence of pervasive sex based discriminatory intimidation, ridicule, and insult for approximately three months. For example, there is evidence that Wall talked, on a *daily* basis, about wanting to "get rid" of two female store managers, including telling Smith that he was going to make a female store manager cry "so she quits." (Doc. No. 28 ¶¶ 21, 27). There is evidence that Wall told Smith: "this is why women should not be in your position" and that "women are too emotional." (Doc. No. 27-8 at PageID # 307). There is also evidence that Wall *regularly* berated female employees, including Smith, for minor infractions. (Doc. No. 24-1 at PageID # 138, 143, 149, 152, 158). There is also evidence that Wall told Smith to stop acting like a "battered woman," physically cornered her and yelled at her for 45 minutes to an hour while she was crying, and he was flailing his hands in her face. (Doc. No. 27-8 at PageID # 290-291). Viewing the evidence in the light most favorable to Smith, Verge has failed to show an absence of evidence in support of this element. *See Hawkins*, 517 F.3d at 333–34 (Summary judgment is improper if the plaintiff advances evidence of harassment that is "ongoing," "commonplace," and "continuing.").

**C. Retaliation**

To establish a *prima facie* case of retaliation under Title VII, Smith must show that: (1) she engaged in protected activity, (2) Verge was aware of the protected activity, (3) Verge took an action that was materially adverse to Smith, and (4) there is a causal connection between Smith's protected activity and Verge's adverse action. *See Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021). Verge challenges Smith's ability to show the first and third elements of her claim.[5] As the Court has already found that there are material questions of fact in dispute as to whether Smith was constructively discharged, it turns to Verge's argument that Smith did not engage in protected activity.

"[O]pposing any practice that the employee reasonably believes to be a violation of Title VII" constitutes protected activity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). It is well established that, "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices" is protected conduct under Title VII. *Id.*; *see also Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). Here, it is undisputed that Smith complained to managers, human resources, and other employees about Wall treating her differently based on her sex. (Doc. No. 28 ¶¶ 72, 77-79; Doc. No. 31 ¶ 5). Nevertheless, Verge argues Smith's complaints do not constitute protected activity under Title VII because no reasonable person could have believed that Wall's alleged harassment of Smith was severe, pervasive, or based on her gender. (*See* Doc. No. 22 at 19-21 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269-270 (2001)). In *Breeden*, the Supreme Court held that a woman's complaint to her employer about a single comment from her supervisor did not constitute an

---

[5] To the extent Verge challenges Wall's knowledge of Smith's complaints against him, (Doc. No. 22 at 21-22), Smith produces evidence showing that she personally notified Wall that she had reported his behavior to human resources. (Doc. No. 27-1 ¶ 4). Thus, there is a genuine issue of material fact as to Wall's knowledge of Smith's complaints against him.

9

activity protected by Title VII for purposes of her Title VII retaliation claim because it found that no reasonable person could have believed that Title VII's sex discrimination provision was implicated by single incident. 532 U.S. at 269-271. As the present case is not limited to a single comment or isolated incident, *see supra*, *Breeden* does not support dismissal of Smith's retaliation claim. Accordingly, summary judgment will not be granted as to Smith's retaliation claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE